UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT    BRIDGEPORT

May  11        2012

Roberto D. Thoma, Clerk
By: B. Sballu
Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| RICHARD PINTO and | : |
| PETER PINTO | : |
| | : |
| | : |

CRIMINAL NO.  3:12CR 101  (SRU)

VIOLATIONS:
18 U.S.C. § 371 [Conspiracy]
18 U.S.C. § 1343 [Wire Fraud]
18 U.S.C. § 2 [Causing an Act to Be Done]

INFORMATION

The United States charges:

COUNT ONE
(Conspiracy)

Background

At all times relevant to this Information:

1.      The Oxford Collection Agency, Inc., a/k/a Oxford Management Services, a/k/a

OMS, a/k/a Oxford Collections ("Oxford Collection Agency"), was a private financial services

company engaged in accounts receivables management, primarily debt collecting.  Oxford

Collection Agency maintained places of business in New York, Pennsylvania and Florida.  At

various times, Oxford Collection Agency was owned, in part, by the defendants, RICHARD

PINTO and PETER PINTO.  Oxford Collection Agency conducted business operations,

including the collection of debts, in the District of Connecticut and elsewhere.

2.      Businesses and other entities contracted with Oxford Collection Agency to collect

debts.  As part of its agreement with clients, Oxford Collection Agency was supposed to collect

the debts from debtors, report all such collections and remit the collected payments back to the

appropriate client.  In some instances, the client would pay Oxford Collection Agency a

percentage of the funds collected; in other instances, the client would allow Oxford Collection Agency to subtract its commission before remitting payment. Oxford Collection Agency collected debts nationwide, including from residents of Connecticut. Oxford Collection Agency's clients included, among others, an educational institution, a laboratory, a computer company and various banks.

3.      In or about 2007, Oxford Collection Agency started drawing on a line of credit from Webster Bank, a bank based in Connecticut, to finance its operations. Oxford Collection Agency continued drawing on an increasing credit line from Webster Bank until roughly 2011.

<u>The Roles of the Co-Conspirators</u>

4.      Defendant RICHARD PINTO was the co-founder and Chairman of the Board of Oxford Collection Agency. RICHARD PINTO was the ultimate decision-maker at Oxford Collection Agency and, as such, was the *de facto* leader and organizer of the conspiracy.

5.      Defendant PETER PINTO was the President and Chief Executive Officer at Oxford Collection Agency. PETER PINTO carried out the day-to-day operations at Oxford Collection Agency, managing Oxford Collection Agency's employees, clients and operations.

6.      Co-Conspirator 1, a person whose identity is known to the United States, was an executive at Oxford Collection Agency. As such, he oversaw Oxford Collection Agency's finances, including, among other things, managing the client trust accounts and remittances and Oxford Collection Agency's line of credit.

7.      Co-Conspirator 2, a person whose identity is known to the United States, was co-founder, co-owner and an executive at Oxford Collection Agency. During certain relevant time periods, Co-Conspirator 2's duties included managing Oxford Collection Agency's collection

processes, supposedly ensuring that Oxford Collection Agency was compliant with client requirements and managing investments in the company.

8.      From approximately December 2004 to approximately November 2010, Co-Conspirator 3, a person whose identity is known to the United States, was an executive at Oxford Collection Agency. At various relevant times, his duties included overseeing client services, customer service and the information and technology departments.

<u>Other Individuals and Entities</u>

9.      "Investor 1" and "Investor 2," whose identities are known to the United States, were investors in Oxford Collection Agency.

10.     "Assistant 1" was an employee at Oxford Collection Agency.

11.     Webster Bank was a Connecticut-based bank. Oxford Collection Agency received a line of credit from Webster Bank. RICHARD PINTO, PETER PINTO, Co-Conspirator 1 and Co-Conspirator 2 met with Webster Bank officials in Connecticut and elsewhere to discuss the line of credit. Webster Bank was a recipient of assistance under the Troubled Asset Relief Program ("TARP").

12.     Washington Mutual, Inc. ("WaMu") was a bank based in Washington State that contracted with Oxford Collection Agency for the collection of some of its debts.

13.     Cogent Communications was an internet service provider headquartered in Washington, D.C. that contracted with Oxford Collection Agency for the collection of some of its debts.

14.     Laboratory Corporation of America Holdings ("Labcorp") was a clinical laboratory corporation headquartered in Burlington, North Carolina that contracted with Oxford

Collection Agency for the collection of some of its debts.

15.    Dell Financial Services was a company that provided financing for the acquisition of new computers and related products sold by Dell, Inc.  Dell Financial Services contracted with Oxford Collection Agency for the collection of some of its debts.

<u>Purpose of the Conspiracy</u>

16.    The purposes of the conspiracy included, among others, the following:

a.    using the resources of Oxford Collection Agency, that is, Oxford Collection Agency, for the personal benefit of the defendants and others and to achieve their corrupt ends;

b.    enriching the owners and employees of Oxford Collection Agency in money and property by collecting debts on behalf of their clients under the false pretense that Oxford Collection Agency would report all collections or remit the full amount owed to certain clients;

c.    maintaining the operations of Oxford Collection Agency by fraudulently soliciting funds from a bank and investors without disclosing Oxford Collection Agency's fraudulent conduct or accurately describing its financial condition;

d.    using the proceeds from unlawful activity to promote the carrying on of other unlawful activity; and

e.    concealing and disguising their illegal acts by making false and misleading statements and representations to clients, investors, bank executives and debtors.

4

<u>The Conspiracy</u>

17.      Beginning by at least 2007 and continuing to approximately March 2011, the exact dates being unknown to the United States, in the District of Connecticut and elsewhere, the defendants RICHARD PINTO and PETER PINTO and other persons known and unknown to the United States, did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and others to commit offenses against the United States, namely,

a.      to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

b.      to devise and intend to devise a scheme and artifice to defraud a bank insured by the Federal Deposit Insurance Corporation or chartered by the United States, and to obtain the money, funds or other property owned by or under the control of such a bank by means of materially false and fraudulent pretenses, representations and promises in violation of Title 18, United States Code, Section 1344.

c.      To knowingly and willfully conduct illegal financial and monetary transactions or cause others to conduct illegal financial and monetary transactions affecting interstate and foreign commerce, which involved the proceeds of bank fraud, and with the intent of carrying on of a wire fraud scheme in violation of Title 18, United States Code, Section

1956(a)(1)(A)(i).

<u>Manner and Means of the Conspiracy</u>

18.     The manner and means by which the defendants and others, both known and unknown to the United States, sought to accomplish the objects of the conspiracy included the following:

<u>Client and Debtor Fraud</u>

a.      It was part of the conspiracy that RICHARD PINTO, PETER PINTO, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3 and others would and did cause Oxford Collection Agency to collect debts from consumers under false and fraudulent pretenses, including the pretense that Oxford Collection Agency would report all such collections to the appropriate client.

b.      It was part of the conspiracy that RICHARD PINTO, PETER PINTO, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 and others would and did cause Oxford Collection Agency routinely to withhold collected debts from certain clients, running up what Oxford Collection Agency employees referred to as a client's "backlog."

c.      It was part of the conspiracy that PETER PINTO, Co-Conspirator 1 and Co-Conspirator 3 would and did cause Oxford Collection Agency to create and issue false and fraudulent periodic collection reports to certain clients that substantially misrepresented the amount of funds collected by Oxford Collections Agency on behalf of those clients.

d.      It was part of the conspiracy that PETER PINTO, Co-Conspirator 1 and others would and did cause Oxford Collection Agency to transfer money from one client trust account to another client trust account, from Oxford Collection Agency's operating account to a

6

client trust account, or from a client trust account to the operating account.

        e.      It was part of the conspiracy that defendants RICHARD PINTO, PETER

PINTO, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3 and others, using the resources of

Oxford Collection Agency, engaged in a scheme or artifice to defraud debtors and Oxford

Collection Agency's clients of money or property by means of materially false and fraudulent

pretenses, representations, promises and material omissions and caused the use of the United

States interstate wires.

Bank Fraud

        f.      It was part of the conspiracy that RICHARD PINTO, PETER PINTO, Co-

Conspirator 2 and Co-Conspirator 3, without accurately disclosing the true financial state of

Oxford Collection Agency to Webster Bank, executed loan documentation to induce Webster

Bank to extend a line of credit to Oxford Collection Agency.

        g.      It was part of the conspiracy that RICHARD PINTO directed at least one

employee to withhold from Webster Bank financial information about Oxford Collection

Agency's backlogs and unpaid payroll taxes.

        h.      It was part of the conspiracy that RICHARD PINTO, PETER PINTO, and

Co-Conspirator 1 sent falsified financial statements to Webster Bank in order to maintain Oxford

Collection Agency's line of credit.

        i.      It was part of the conspiracy that RICHARD PINTO, PETER PINTO, Co-

Conspirator 1, and Co-Conspirator 2 met with representatives from Webster Bank in Connecticut

to help secure and increase Oxford Collection Agency's line of credit without accurately

disclosing the company's financial condition to Webster Bank.

7

j.      It was part of the conspiracy that defendants RICHARD PINTO, PETER PINTO, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3, as well as other co-conspirators, using the resources of Oxford Collection Agency, engaged in a scheme and artifice to defraud Webster Bank, a bank insured by the Federal Deposit Insurance Corporation, of money and property by means of materially false and fraudulent pretenses, representations, promises and material omissions.

### Investor Fraud

k.      It was part of the conspiracy that RICHARD PINTO, PETER PINTO, Co-Conspirator 1 and Co-Conspirator 2 marketed Oxford Collection Agency to potential investors for investment without disclosing to those investors the significant backlogs and outstanding payroll taxes.

l.      It was part of the conspiracy that defendants RICHARD PINTO, PETER PINTO, Co-Conspirator 1, Co-Conspirator 2, and others, using the resources of Oxford Collection Agency, engaged in a scheme and artifice to defraud investors of money and property by means of materially false and fraudulent pretenses, representations, promises and material omissions, and in executing the scheme caused the use of the interstate wires.

### Money Laundering

m.      It was part of the conspiracy that defendants RICHARD PINTO, PETER PINTO, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3 and others knowingly and willfully conducted illegal financial and monetary transactions or caused others to conduct illegal financial and monetary transactions affecting interstate and foreign commerce, which involved the proceeds of bank fraud, and with the intent of carrying on a wire fraud scheme.

8

Overt Acts

19.     In furtherance of the conspiracy, and to accomplish its purposes and objects, the defendants and their co-conspirators, both known and unknown to the United States, committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a.     On or about April 5, 2007, RICHARD PINTO, PETER PINTO, Co-Conspirator 2 and Co-Conspirator 3 signed a Pledge Agreement with Webster Bank in order to secure the line of credit for Oxford Collection Agency.

b.     On or about August 24, 2007, PETER PINTO emailed Co-Conspirator 2 and Assistant 1, directing Assistant 1 to remit an amount of money to Cogent Communications other than what had been actually collected.

c.     On or about December 11, 2007, Co-Conspirator 3 emailed Assistant 1 and PETER PINTO a spreadsheet outlining the difference between what was collected on behalf of Dell Financial Services and what Oxford Collection Agency would actually remit to Dell Financial Services.

d.     On or about December 17, 2007, PETER PINTO sent an email to Investor 1, copying Co-Conspirator 1, Co-Conspirator 2 and Co-Conspirator 3, informing the potential investor that Oxford Collections would be sending him a book describing the company's efforts to raise equity investment.

e.     On or about December 18, 2007, Co-Conspirator 1 emailed an electronic version of the book to the Investor 1, which failed to include any mention of Oxford Collection Agency's issues with client backlogs.

9

      f.      On or about December 12, 2008, Co-Conspirator 1 emailed PETER PINTO, informing him that the gross backlog for Labcorp was approximately $1,082,632.96.

      g.      On or about December 18, 2008, Co-Conspirator 3 emailed PETER PINTO, Co-Conspirator 1 and Co-Conspirator 2, discussing Labcorp's $1 million gross backlog.

      h.      On or about December 26, 2008, Co-Conspirator 1 transferred approximately $315,000 from Oxford Collection Agency's operating account, which included funds drawn from Webster Bank's line of credit, to WaMu's trust account and remitted approximately $357,325.98 to WaMu representing that the funds had been collected from debtors.

      i.      On or about March 24, 2008, PETER PINTO emailed Co-Conspirator 3 and Assistant 1, asking Co-Conspirator 3 to direct Assistant 1 on what portion of a collected amount should be remitted to Dell Financial Services.

      j.      On or about June 20, 2008, Co-Conspirator 1 emailed Investor 1, copying RICHARD PINTO and PETER PINTO, providing investor materials to Investor 1.

      k.      On or about June 30, 2009, Co-Conspirator 1 emailed PETER PINTO, Co-Conspirator 2 and Co-Conspirator 3, informing them that WaMu's backlog was approximately $281,000 at that time.

      l.      On or about July 2, 2009, Co-Conspirator 1 emailed Webster Bank representatives, copying RICHARD PINTO and attaching to it financial statements for the first three months of 2009 that failed to disclose the existence of the backlog or the outstanding payroll taxes.

      m.      On or about August 31, 2009, Co-Conspirator 2 emailed Investor 2,

10

copying RICHARD PINTO and PETER PINTO, Co-Conspirator 1 and Co-Conspirator 3,

representing to Investor 1 that "[b]ased on client relationships and forecasted new relationships,

OMS is confident no extraordinary events would cause investor(s) to lose all principal other than

Force Majeure events," without disclosing the backlog or outstanding payroll taxes.

       n.     On or about November 22, 2009, Co-Conspirator 1 emailed Webster Bank

representatives, copying RICHARD PINTO and PETER PINTO, attaching Oxford Collection

Agency's financial statements for the first nine months of 2009,  without disclosing the existence

of the backlog or the outstanding payroll taxes.

       o.     On or about January 22, 2010, RICHARD PINTO, PETER PINTO and

Co-Conspirator 2 executed a Fourth Modification Agreement with Webster Bank, increasing

Oxford Collection Agency's line of credit with Webster Bank to $6 million and representing to

the bank that they knew of no facts that would warrant litigation against the company.

       p.     On or about February 18, 2010, PETER PINTO emailed four potential

investors, copying RICHARD PINTO, Co-Conspirator 1 and Co-Conspirator 2, attempting to

arrange a meeting with them.

       q.     On or about May 7, 2010, PETER PINTO sent an email to RICHARD

PINTO, Co-Conspirator 1, Co-Conspirator 2 and Co-Conspirator 3, setting out an agenda for a

meeting to discuss, among other items, the fraud they were committing on their clients and

debtors (i.e. the backlog) and tax issues.

     r.     On or about November 12, 2010, Co-Conspirator 1 emailed another Oxford Collections employee directing her to take money from one client account to pay another client.

     All in violation of Title 18, United States Code, Section 371.

COUNT TWO
(Wire Fraud)

20.     The allegations contained in paragraphs 1 through 16 and 18 through 19 are hereby realleged and incorporated by reference as if fully set forth herein

21.     From approximately January 2007 to approximately March 2011, in the District of Connecticut and elsewhere, RICHARD PINTO and PETER PINTO, together with others known and unknown to the United States, knowingly and intentionally devised and intended to devise, and participated in, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, that is, defendants RICHARD PINTO and PETER PINTO caused Oxford Collection Agency to collect money from various debtors on behalf of its clients, when, in truth and fact, the defendants caused Oxford Collection Agency to keep a significant portion of their collections without reporting it to the appropriate client.

22.     For the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, in the District of Connecticut and elsewhere, the defendants knowingly caused to be transmitted by means of wire communication in interstate commerce money transfers and emails, including but not limited to, on or about May 7, 2010, PETER PINTO sent an email to RICHARD PINTO, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3,

12

setting out an agenda for a meeting to discuss, among other items, the fraud they were committing on their clients and debtors (i.e. backlog).

All in violation of Title 18, United States Code, Sections 1343 and 2.

UNITED STATES OF AMERICA

_____
DAVID B. FEIN
UNITED STATES ATTORNEY

_____
LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY

13